# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

NANCY A. SLAVINSKI       :
                                 :
    v.                           :     Civil No. CCB-08-890
                                 :
COLUMBIA ASSOCIATION, INC.  :
                                 :

## MEMORANDUM

Nancy A. Slavinski, on behalf of herself and other similarly situated employees, has sued Columbia Association, Inc. ("Association"), for the recovery of unpaid overtime wages under the Fair Labor Standards Act ("FLSA"). Now pending before the court is the plaintiff's motion to show cause and for an injunction and her motion for conditional class certification and court authorized notification. For the following reasons, the plaintiff's motions will be denied.

## BACKGROUND

Columbia Association, Inc. is a homeowners association incorporated in Maryland and located in Columbia, Maryland. The Association operates several recreational facilities for its members, including three athletic facilities, over twenty swimming pools, an ice rink, and tennis courts. The Association hired Ms. Slavinski in 1995 as a salaried employee. In 2005, Ms. Slavinski began working as the KidSpace Program Manager at the Columbia Athletic Club, one of the Association's athletic facilities. Ms. Slavinksi's primary duties as the KidSpace Program Manager included providing direct care to children between the ages of six weeks and thirteen years, assisting co-workers in day-to-day operations, and interacting with the children's parents

or guardians. Ms. Slavinski claims that the Association improperly classified her as exempt under the FLSA because she did not work in a bona fide executive,[1] administrative,[2] or professional capacity[3] despite her title of "Manager." (Slavinski Aff. ¶ 3, Aug. 9, 2008.)

In her complaint, Ms. Slavinski alleged that at least ten other similarly situated employees were improperly classified as exempt, and also were made to work over forty hours per week without being paid overtime wages. (Compl. ¶ 20.) On July 10, 2008, Ms. Slavinski filed a motion to facilitate identification and notification of similarly situated employees under the FLSA § 216(b). Ms. Slavinski supported this motion with an affidavit in which she provided the names of four employees, and identifying information for at least two others, who were allegedly improperly classified by the Association. (Slavinski Aff. ¶ 8, Aug. 9, 2008.) She also alleged that these and other potential plaintiffs were waiting to join the lawsuit until they could review a formal notice of collective action because they feared retaliation if they joined a suit not approved for court-facilitated notice. (*Id.* at ¶ 10.) On January 20, 2009, this court denied Ms. Slavinski's motion without prejudice, holding that her complaint and lone affidavit were

---

[1] The FLSA defines an "executive" employee to include those employees who are "(1) [c]ompensated on a salary basis at a rate of not less than $455 per week . . .; (2) [w]hose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) [w]ho customarily and regularly directs the work of two or more other employees; and (4) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100.

[2] The FLSA defines an "administrative" employee to include those employees who are "(1) [c]ompensated on a salary or fee basis at a rate of not less than $455 per week . . .; (2) [w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) [w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200.

[3] The FLSA defines a "professional" employee to include those employees who are "(1) [c]ompensated on a salary or fee basis at a rate of not less than $455 per week . . .; (2) [w]hose primary duty is the performance of work: (i) [r]equiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; or (ii) [r]equiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor." 29 C.F.R. § 541.300.

2

insufficient by themselves to provide the requisite factual showing of her claims necessary to grant conditional certification. Instead, the court order limited discovery in the following areas: (1) evidence that would clarify Ms. Slavinski's job functions, insofar as it would clarify her exempt or non-exempt status under the FLSA; (2) evidence related to the number and exempt or non-exempt status of employees performing similar functions or similar levels of function to Ms. Slavinski at the Association's other facilities; and (3) evidence related to Ms. Slavinski's termination.[4]

On April 23, 2009, after the parties failed to resolve a dispute related to discovery, the court ordered the Association to provide thorough responses to Ms. Slavinski's first set of interrogatories about exempt employees at all of its recreational facilities. The court also held that the Association did not need to respond to Ms. Slavinski's interrogatories about hourly employees or overtime generally. On May 22, 2009, the Association provided a supplemental response to the plaintiff's interrogatories pursuant to the court's order, identifying 23 employees who were classified as exempt under the FLSA. (*See* Pl.'s Mot. to Show Cause, Ex. 1.) On June 9, 2009, the court issued an additional order for counsel to set dates for any depositions that might be necessary. Neither party, however, chose to take any depositions.

During the course of discovery, defense counsel began conducting its own investigation into Ms. Slavinski's claims by interviewing employees the Association had classified as exempt under the FLSA. Lynn Clements, defense counsel for the Association, spoke with 14 of the 23 employees identified by the Association in its May 22, 2009 supplemental response to the plaintiff's interrogatories. The 14 employees Ms. Clements spoke with are currently employed

---

[4] Ms. Slavinski alleged in her affidavit that she was terminated in response to filing this lawsuit. (Slavinski Aff. ¶ 9, Aug. 9, 2008.) The Association claimed that Ms. Slavinski resigned after having been demoted for "engaging in gross misconduct." (Def.'s Surreply to Pl.'s Mot. to Facilitate Notification at 1 n.1.)

by the Association. (*See* Clements Aff. ¶ 3.) At the beginning of each meeting, Ms. Clements informed each employee that she was an attorney with the Association and that the purpose of the meeting was to discuss Ms. Slavinski's lawsuit. (*Id.* at ¶ 7.) Ms. Clements provided each employee with a copy of Ms. Slavinski's complaint and explained her allegations that the Association had misclassified employees as exempt who were entitled to overtime compensation. (*Id.* at ¶ 8.) Ms. Clements also explained to the employees that their participation was completely voluntary and that "they would not be offered anything of value in exchange for their cooperation, that they could consult a lawyer of their choosing before deciding whether to speak with [her] or to sign any written statement, that they could decline to speak with [her] or to provide and sign a written statement," and that the law expressly prohibited the Association from retaliating against them if they chose to join Ms. Slavinski's lawsuit. (*Id.* at ¶ 10.) At the conclusion of each meeting, Ms. Clements asked each employee whether he or she would be willing to sign a declaration only after explaining that it could negatively impact his or her right to join the lawsuit or to obtain monetary recovery from the Association. (*Id.* at ¶ 16.)

On July 1, 2010, Ms. Slavinski filed a motion to show cause and for an injunction, alleging that defense counsel has been conducting an "extensive series of secret meetings" with potential class members with the primary purpose of having them sign affidavits agreeing not to join the prospective class. (Pl.'s Mot. to Show Cause at 6.) On the same day, Ms. Slavinski also filed a motion for conditional class certification and court authorized notification. The Association has opposed both motions.

## ANALYSIS

### A. Motion to Show Cause and for an Injunction

Ms. Slavinski alleges that Ms. Clements's interviews with the 14 Association employees constituted improper communications with prospective plaintiffs. She requests the court to investigate the interviews and to enjoin the Association from further improper communications with prospective class members. To avoid the potential for abuse, district courts have broad discretion to limit communications between parties and putative class members. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981); *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1202 (11th Cir. 1985) ("Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal."). This discretion, however, is not unlimited. *Gulf Oil*, 452 U.S. at 100. To establish that a limitation on communications between a defendant and prospective class members is warranted, the plaintiff must show "(1) that a particular form of communication has occurred or is threatened to occur and (2) that the particular form of communication at issue is abusive in that it threatens the proper functioning of the litigation." *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1226-27 (S.D. Ala. 2008) (internal quotation marks omitted) (quoting *Cox Nuclear Medicine v. Gold Cup Coffee Servs., Inc.*, 214 F.R.D. 696, 697-98 (S.D. Ala. 2003)). Moreover, a court may not restrict communications between parties and potential class members "without a specific record showing by the moving party of the particular abuses by which it is threatened." *Gulf Oil*, 452 U.S. at 102. The "mere possibility of abuses does not justify routine adoption of a communications ban." *Id.* at 104.

The Association does not dispute that it engaged in communications with 14 employees who the plaintiff claims are prospective class members. The Association, however, contends that Ms. Clements's interviews with these employees were not abusive to the proper functioning of

this litigation, and that the plaintiff has provided no evidence that the interviews were improper. Ms. Slavinski argues that the interviews were abusive to the proper functioning of her lawsuit for two reasons: (1) the interviews were deliberately concealed from the court and plaintiff's counsel, who was neither invited to participate, nor informed, of the interviews, and (2) the inherently coercive nature of the employer-employee relationship.

That the Association conducted these interviews *ex parte* does not make the communications improper or abusive to the proper functioning of the lawsuit. Because the 14 employees interviewed by Ms. Clements had not yet opted-in to the lawsuit, and in the absence of any court order restricting such contact, defense counsel was not required either to inform plaintiff's counsel, or invite him to participate in the interviews. *See Longcrier*, 595 F. Supp. 2d at 1226 ("As a general matter, employers are free to communicate with unrepresented prospective class members about the lawsuit and even to solicit affidavits from them concerning the subject matter of the suit."); *Parks v. Eastwood Ins. Servs., Inc.*, 235 F. Supp. 2d 1082, 1083 (C.D. Cal. 2002) ("Until they 'opt-in,' prospective § 216(b) plaintiffs are not yet parties to the action, they have no attorney, and no attorney-client relation is yet in issue."). This is especially the case here, where the court has not yet granted a conditional class certification and it is still unclear whether the employees are similarly situated to the plaintiff. Moreover, once the Association provided the plaintiff with the names of the 23 employees whom the Association had classified as exempt under the FLSA, plaintiff's counsel could have initiated his own conversation with these employees, requested affidavits from them, or scheduled depositions with them. He has chosen not to do so.

The inherently coercive nature of the employer-employee relationship also is insufficient

to demonstrate that the Association's interviews were improper. *See Kerce v. West Telemarketing Corp.*, 575 F. Supp. 2d 1354, 1366-67 (S.D. Ga. 2008) (declining to strike 16 employee declarations collected by the employer during the pre-certification phase of a § 216(b) action based solely upon the inherently coercive nature of the employer-employee relationship because there was "no evidence that [the employer] misrepresented facts about the lawsuit, discouraged participation in the suit, or undermined the class' confidence in, or cooperation with, class counsel.") (citation omitted); *Longcrier*, 595 F. Supp. 2d at 1227 ("In tracing out the fault line between conduct which warrants restrictions and conduct which does not, it bears emphasis that mere inherent coerciveness in the employment relationship is insufficient, in and of itself, to warrant imposition of limitations on employers' ability to speak with potential class members prior to certification.") (citing *Gulf Oil*, 452 U.S. at 104). In cases where courts have found communications between employers and prospective class members to be abusive, the substance of the communications was very different from that described by the Association's counsel. *See, e.g.*, *Longcrier*, 595 F. Supp. at 1227-28 (employer told prospective class members it was conducting a survey and obtained declarations for its "survey" without disclosing to the employees the existence of a class action lawsuit or that the declarations might strip them of the right to join the lawsuit); *O'Brien v. Encotech Constr. Servs., Inc.*, 203 F.R.D. 346, 348 (N.D. Ill. 2001) (employer obtained releases from employees in exchange for money). Ms. Slavinski has provided no evidence that Ms. Clements misrepresented facts about the lawsuit or discouraged participation in the suit. Indeed, no employee who signed a declaration has stepped forward to object to the interview as misleading or coercive. Without specific evidence that the defendant's contacts with its employees were abusive, an injunction prohibiting further communications is

7

not warranted. Accordingly, the plaintiff's motion will be denied.

B. **Motion for Conditional Class Certification and Court Authorized Notification**

Title 29 U.S.C. § 216(b)[5] establishes an "opt-in" scheme whereby potential plaintiffs must affirmatively notify the court of their intention to become a party to the collective action. To effectuate the remedial purpose of this act, it is well settled that district courts have the discretion, in appropriate cases, to allow such claims to proceed as a collective action and to facilitate notice to potential plaintiffs. *See Camper v. Home Quality Mgmt. Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000) (citing *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989)). Collective action certification may be appropriate where potential class members are "similarly situated," in that they are victims of a common policy, scheme, or plan that violated the law. *Marroquin v. Canales*, 236 F.R.D. 257, 260 (D. Md. 2006). While a plaintiff need only provide the court with a "relatively modest factual showing" of her claims for a court to grant conditional class certification, *see D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995), and "[a]n adequate factual showing by affidavit . . . may suffice," *Marroquin*, 236 F.R.D. at 259, this court previously denied Ms. Slavinski's motion for class certification for failing to carry this modest burden of proof. (*See* Mem. Op. at 5, Jan. 20, 2009.) The opinion explained that the facts alleged in Ms. Slavinski's complaint and "her lone affidavit" supporting the motion for certification left unclear whether there existed other Association employees similarly situated to

---

[5] 29 U.S.C. § 216(b) states, in pertinent part:

> An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

8

Ms. Slavinski, but permitted limited discovery. After engaging in limited discovery, Ms. Slavinski still cannot provide a "relatively modest factual" showing that other Association employees similarly situated to herself were victims of a common policy, scheme, or plan to violate the FLSA.

As an initial matter, Ms. Slavinski continues to ask the court to rely solely on the facts alleged in her own affidavit to grant her motion for collective certification. To support her renewed motion for collective action certification, Ms. Slavinski has provided the court an affidavit, dated July 2, 2010, supplementing her original affidavit, dated August 9, 2008. Beyond these two affidavits, Ms. Slavinski provides no affidavit or deposition from a current or former Association employee to support her claim. While courts have found "an adequate factual showing by affidavit," in no case cited by the plaintiff has a court granted collective action certification based on the lone affidavit of the one named plaintiff who initiated the suit. *See, e.g.*, *Marroquin*, 236 F.R.D. at 258-59 (at least nine affidavits to support a factual showing); *Williams v. Long*, 585 F. Supp. 2d 679, 685 (D. Md. 2008) (two affidavits, in addition to the named plaintiff's affidavit, to support a factual showing); *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 307 (S.D.N.Y. 1998) (ten affidavits indicating that employees were not paid overtime compensation).

Even if Ms. Slavinski's affidavits alone were sufficient to provide a factual showing to support her claims, they continue to leave several important matters unclear—most significantly, whether any other Association employees are similarly situated to her. Ms. Slavinski's second affidavit provides a list of unnamed individuals, identified by job title, whom she believes are similarly situated to herself, in that they were improperly classified by the Association as

exempt. (*See* Slavinski Aff. ¶ 7, July 2, 2010.) This list is partially derived from the Association's answers to the plaintiff's interrogatories identifying 23 employees who were classified as exempt under the FLSA, but also includes an additional 14 employees whom Ms. Slavinski claims were left out of the defendant's answer. (*Id.* at ¶ 9.) Merely because the Association classified these individuals as exempt, however, does not mean that they are similarly situated to Ms. Slavinski. Ms. Slavinski provides no evidence demonstrating that these employees performed similar functions or similar levels of function to Ms. Slavinski at the Association. Indeed, for most of the individuals identified, she provides no description of their duties beyond their job title. (*See id.*) Without a description of their job duties, the court cannot determine whether these employees were similarly situated to Ms. Slavinski, or if they may be entitled to non-exempt status. *See D'Anna*, 903 F. Supp. at 894 ("The mere listing of names, without more, is insufficient absent a factual showing that the potential plaintiffs are 'similarly situated.'") (citing *Frank v. Capital Cities Communications, Inc.*, 88 F.R.D. 674, 678 (S.D.N.Y.), *amended by* 509 F. Supp. 1352 (S.D.N.Y. 1981)).

Ms. Slavinski also argues that her affidavits, combined with the Association's inability to identify a specific person responsible for developing its FLSA policy, provide a sufficient factual showing that the Association had a common policy to violate the FLSA. In her second affidavit, Ms. Slavinski states, "I was informed that my position was classified as exempt because it was a salaried position rather than an hourly position. I do not believe that any other standard or policy existed. I am quite certain that no one at the Columbia Association knew whether my position was classified on the basis of what I have now been told was an 'executive classification' or an 'administrative classification.'" (Slavinski Aff. ¶ 4, July 2, 2010.) Ms.

Slavinski's own beliefs about the Association's FLSA policy are not sufficient to establish the requisite modest factual showing that the Association had a common policy to violate the FLSA. The Association's inability to identify a single person responsible for developing its FLSA policy or for determining which jobs would be classified as exempt also does not provide factual support that the Association had a policy to violate the FLSA. Indeed, the Association stated in an email to plaintiff's counsel that § 4.08 of the Association's Team Member Handbook provides a statement of the Association's guiding policy regarding FLSA classifications. (*See* Pl.'s Mot. for Conditional Certification, Ex. 8.) There is no evidence that the Association's policy was to classify its employees as exempt based solely upon whether they were paid by salary, rather than by the hour.

Because Ms. Slavinski has failed to provide a relatively modest factual showing to support her claim, even after being afforded the opportunity of limited discovery, her motion for conditional class certification and court authorized notification will be denied.

## **Conclusion**

For the foregoing reasons, the plaintiff's motion to show cause and for an injunction will be denied. The plaintiff's motion for conditional class certification and court authorized notice also will be denied. A separate Order follows.

<u>March  30, 2011</u>                                  /s/
Date                                        Catherine C. Blake
                                            United States District Judge